UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DWAYNE LEE McCORMICK,<br><br>                    Plaintiff,<br><br>        v.<br><br>COUNTY COMMISSIONER BRENT REINKEY; LT. CHRISTOPHER HOGAN; SGT. JUSTIN KIMBALL; DEP. SETH BOWEN; CAPT. DOUGLAS HUCHES; and SHERIFF TOM CARTER,<br><br>                    Defendants. | Case No. 1:21–cv-00454-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Dwayne Lee McCormick's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint. *See* Dkt. 8. The Court now reviews the Amended Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order dismissing the Amended Complaint and directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

1.      **Pleading Standards and Screening Requirement**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 & 1915A. In

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

screening a complaint under §§ 1915 and 1915A, a court may, but is not required to, consider documents attached to the Complaint, as well as "matters properly submit to judicial notice." *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (motion to dismiss context).

The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. §§ 1915(e)(2) & 1915A. The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories— together with claims that fall outside a federal court's narrow grant of jurisdiction— encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

## 2.    Factual Allegations

Plaintiff is an inmate currently held in the Twin Falls County Jail.[2] Plaintiff alleges that his fiancée attempted to mail a document to him at the jail. The document was "printed in black printer ink, on loose leaf paper, not bound, glued, and with no soft or hard cover." *See Am. Compl*., Dkt. 8, at 3. The document was confiscated by jail staff and not delivered to Plaintiff.

According to Plaintiff, jail staff deemed the document a "book," which, by policy, the jail does not permit to be mailed directly to inmates. Rather, the jail permits books to be sent to its library, based on safety and security concerns. As explained to Plaintiff during the grievance process,

> Books can be mailed in and donated to the library if you like. Books to be sent in to individual people who are incarcerated is not allow [sic]. This was established due to fights and destruction of inmate personal property, it became a [sic] institutional safety and security problem. If it is a religious book we provide them. All other publication [sic] can be found on the tablet or in our library.

*Ex. to Am. Compl*., Dkt. 8-1, at 2.

Plaintiff alleges that failing to deliver his fiancée's document to Plaintiff in jail violated the United States Constitution. Plaintiff sues a county commissioner, the Twin Falls County Sheriff, and various jail deputies. Plaintiff seeks damages and injunctive relief.

---

[2] It is unclear whether Plaintiff was a pretrial detainee or a convicted inmate at the time his claims arose. Because different legal standards may apply to Plaintiff's claims depending on his detention or incarceration status, Plaintiff must clarify that status in any second amended complaint.

3.    **Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.    *Standards of Law Governing Plaintiff's Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct, *Taylor*, 880 F.2d at 1045, and a

defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff asserts his § 1983 claims under the First, Eighth, and Fourteenth Amendments. *Am. Compl*. at 4.

### B.    First Amendment Claims

Inmates enjoy a First Amendment right to send and receive mail. *Thornburgh v.*

*Abbott*, 490 U.S. 401, 407 (1989). The standards governing most constitutional claims of inmates, including First Amendment claims, were outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). The *Turner* Court held that a jail or prison may adopt regulations or practices that impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors to consider when determining whether a jail regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–93.

The *Turner* analysis appropriately allows jail officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The deferential *Turner* analysis applies both to claims of convicted prisoners and of pretrial detainees. *See Bull v. City and County of San Francisco,* 595 F.3d 964 (9th Cir.

2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees—who may not be punished—the legitimate penological interests in security and safety apply, but "the penological interests in punishment and rehabilitation may not be applicable outside the prison setting." *Id.* at 974 n.10. In considering claims of pretrial detainees challenging jail regulations or policies, "courts must defer to the judgment of [jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012).

The U.S. District Court for the District of New Mexico has considered an institutional policy prohibiting inmates from receiving books directly through the mail. See *Prison Legal News v. Cty. of Bernalillo*, No. 15-CV-107 JAP/KBM, 2015 WL 13662872, at *3 (D.N.M. June 16, 2015) (unpublished). Like the Twin Falls County Jail policy at issue here, the policy in the Bernalillo County Jail did not permit inmates to receive books sent directly to them through the mail. Instead, books could be donated to the Bernalillo County Jail itself for placement in the library. *Id*. at *3–4.

The district court found that the Bernalillo County Jail's policy satisfied the *Turner* analysis and, accordingly, denied the plaintiff-publisher's motion for a preliminary injunction. The court held that the policy against inmates receiving books through the mail was rationally related to legitimate penological interests. The primary interest that the policy served was the interest in safety and security, as books can be used to "smuggle contraband" and are "hard to search effectively." *Id*. at *9–11.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

The Court finds the analysis in *County of Bernalillo* persuasive. Prohibiting books being sent directly to inmates, but instead requiring them to be sent to the jail library, is reasonably related to the legitimate—indeed, the compelling—interest in jail security and safety. Even if the document sent by Plaintiff's fiancée was not actually a book, there is nothing in the Complaint to suggest that any jail staff member acted recklessly, knowingly, or purposely in determining that the document *was* a book. *See Kingsley*, 576 U.S. at 396. At most, jail deputies may have negligently classified the document as a book, which is insufficient to state a plausible § 1983 claim. *See Daniels*, 474 U.S. at 332. Accordingly, the Amended Complaint fails to state a plausible First Amendment claim.

### C.    *Due Process Claims*

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving an individual of life, liberty, or property without following the proper procedures for doing so. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because prisoners' liberty is necessarily circumscribed as a result of conviction, prisoners have a liberty interest in freedom from restraint only if a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

If an inmate shows that he had a liberty interest protected by the Due Process Clause, the next question in the analysis is what process was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of

what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Id*. Three factors inform whether an inmate has received the process to which he was due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335. In addition, due process claims of inmates are subject to the deferential *Turner* analysis. *See Washington v. Harper*, 494 U.S. 210, 225 (1990).

The Amended Complaint fails to state a plausible due process claim for the same reason it fails to state a plausible First Amendment claim—the jail's policy is rationally related to legitimate penological interests. *See Turner*, 482 U.S. at 89. Alternatively, although Plaintiff may have a liberty interest in receiving mail, the Amended Complaint establishes that Plaintiff received all the process to which he was due. Plaintiff was notified of the policy and, after his fiancée's document was rejected, Plaintiff had to opportunity to grieve the issue. *See Mathews*, 424 U.S. at 348. Accordingly, Plaintiff's due process claims are implausible.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

### D.      Equal Protection Claims

The purpose of the Equal Protection Clause of the Fourteenth Amendment "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotation marks omitted). Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985). Inmates are not a suspect or quasi-suspect class for purposes of equal protection analysis. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Therefore, equal protection claims of inmates are subject to a "rational basis" inquiry. *See Heller v. Doe*, 509 U.S. 312, 319–20 (1993).

Under the rational basis test, the relevant inquiry is whether the state action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987). An inmate can prevail on this test only if (1) he is similarly situated with persons who are treated differently by the defendant, and (2) the defendant has no rational basis for the dissimilar treatment. "[E]ven where similarly-situated persons are treated differently by the state, state action is presumed constitutional and will not be set aside if any set of facts reasonably may be conceived to justify it." *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (internal

quotation marks omitted). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of jail officials. *Id*. at 272.

With respect to equal protection claims of inmates, the decisions of jail officials must be given an additional layer of deference under *Turner*. *See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context … even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are "'reasonably related to legitimate penological interests.'") (quoting *Turner*, 482 U.S. at 89). As the Court has already concluded, the jail's policy is rationally related to legitimate penological interests. Thus, the Amended Complaint fails to state a plausible equal protection claim.

### E.    *Eighth Amendment Claims*

Conditions of confinement that amount to cruel and unusual punishment violate the Eighth Amendment of the federal Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Although conditions of confinement may be harsh and restrictive without being a violation of the Eighth Amendment, they cross the line of acceptability when they (1) involve "the wanton and unnecessary infliction of pain," (2) are "grossly disproportionate to the severity of the crime warranting imprisonment," (3) result "in unquestioned and serious deprivation of basic human needs, or (4) deny an inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These severe types of deprivations must be contrasted

with merely uncomfortable conditions of confinement, which are not prohibited by the Eighth Amendment. *Id*. at 349.

An inmate challenging the conditions of his confinement must make two showings. First, the plaintiff must make an objective showing that the deprivation was serious enough "to form the basis for an Eighth Amendment violation." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, "sufficiently grave." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In determining whether the Constitution has been violated, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." *See McKune v. Lile*, 536 U.S. 24, 41 (2002) (Fifth Amendment context).

Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind." *Johnson*, 217 F.3d at 731 (internal quotation marks omitted). This state of mind is referred to "deliberate indifference." *Id*. at 733. To establish an official's deliberate indifference, an inmate must show that (1) the official was aware of a substantial risk to the prisoner's health or safety, and (2) the officer deliberately disregarded that risk. *Farmer*, 511 U.S. at 837. To rebut the subjective inquiry, prison officials may present evidence that they reasonably responded to the risk. *Id*. at 844–45. Mere negligence is not sufficient to establish deliberate indifference; rather, the official's conduct must have been wanton. *Id*. at 835.

If Plaintiff was a pretrial detainee when his claims arose, his Eighth Amendment claims are implausible because that amendment applies only to convicted prisoners.

If Plaintiff was a convicted prisoner when his claims arose, the Complaint still fails to state a plausible Eighth Amendment claim. Being prohibited from receiving his fiancée's document through the mail simply does not involve wanton and unnecessary pain, grossly disproportionate punishment, serious deprivation of basic human needs, or the denial of the minimal civilized measure of life's necessities. *See Rhodes*, 452 U.S. at 347.

## 4.   Standards for Second Amended Complaint

If Plaintiff chooses to file a second amended complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as

state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of a First Amendment claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint." Plaintiff's name

and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.  Plaintiff's Motion Requesting Extension of Time to File Amended Complaint (Dkt. 7) is GRANTED. The Amended Complaint is deemed timely.

2.  The Amended Complaint fails to state a claim upon relief may be granted. Plaintiff has 60 days within which to file a second amended complaint as described above. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[3]

3.  If Plaintiff does not file a timely second amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a

---

[3] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

claim upon relief may be granted, failure to prosecute, or failure to comply with a Court order.

4.    Because a second amended complaint is required for Plaintiff to proceed, Plaintiff's request for appointment of counsel (contained in the Amended Complaint) is DENIED without prejudice.

DATED: May 5, 2022

David C. Nye
Chief U.S. District Court Judge

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17